# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JASON TUCKER, | : | |
| Petitioner, | : | Case No. 3:11cv00330 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| STATE OF OHIO,[1] | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATIONS[2]

## I.    Introduction

Petitioner Jason Tucker is serving a prison sentence of six years and six months due to his convictions in state court on one count of possession of cocaine and one count of having weapons while under a disability.  He is presently in state custody at the Pickaway Correctional Institution in Ohio.

Tucker brings this case pro se seeking a writ of habeas corpus under 28 U.S.C. §2254.  The case is before the Court upon his Habeas Petition (Doc. #1), Respondent's Answer/Return of Writ (Doc. #6), Tucker's Contra Motion (Doc. #8), Respondent's Supplemental Return of Writ (Doc. #12), and the record as a whole.

---

[1]  The proper Respondent in this case is the Warden of the Pickaway Correctional Institution, where Tucker is currently incarcerated.

[2]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II.    Procedural and Factual Background

### A.    Factual Background and Trial Court Proceedings

Tucker's current legal problems began in April 2009 when Clark County, Ohio

Deputy Sheriffs arrested him during their investigation of a possible armed burglary at a

trailer park.  The Ohio Court of Appeals described the events leading to Tucker's arrest as

follows:

> On April 24, 2009, at approximately 1:30 a.m., two members of the
> Clark County Sheriff's Department, Sergeant Brad Barnhart and Deputy
> Jon Snyder, responded separately to a call regarding an armed burglary in
> progress at a trailer park located at 3314 East National Road just outside of
> Springfield, Ohio.  The dispatch reported that the burglary was taking place
> at Trailer 22.  As Deputy Snyder and Sgt. Barnhart approached Trailer 22
> after arriving at the trailer park, they noticed that both of Trailer 21's rear
> doors, the screen door as well as the interior door, were standing open.
> Deputy Snyder testified that all of the trailers in the park were located side
> by side and stood approximately twenty to thirty feet from one another.
>
> Upon observing the open doors, Deputy Snyder and Sgt. Barnhart
> decided to investigate in order to determine whether a robbery was in
> progress in Trailer 21.  Deputy Snyder announced himself three or four
> times as he entered the rear door of the trailer.  Receiving no response,
> Deputy Snyder proceeded to conduct a protective sweep of the interior of
> Trailer 21.  This was done without a warrant.
>
> As Deputy Snyder proceeded through the interior of the trailer, a
> male juvenile emerged from the living room at the far end of the trailer.
> Deputy Snyder immediately initiated a conversation with the juvenile who
> stated that he was fourteen years old.  The juvenile informed Deputy Snyder
> that he was alone in the trailer with his mother, whom he believed was also
> present.  The juvenile's mother, however, was not present in the trailer.
>
> While Deputy Snyder spoke with the juvenile, an adult male, later
> identified as Tucker, walked out of the second bedroom in the trailer.
> Tucker began a conversation with Sgt. Barnhart, stating that he was a
> convicted felon.  Sgt. Barnhart testified that Tucker also stated that he was

2

babysitting the juvenile.  Sgt. Barnhart further testified that he noticed that Tucker appeared nervous and his pants pockets were bulging.  As Sgt. Barnhart approached Tucker, he observed body armor laying in plain view on the floor inside the bedroom from which Tucker had just emerged.

After Tucker provided identification to the officers, Sgt. Barnhart relayed the information through their dispatch and he was advised that Tucker "was a career criminal through the city of Springfield for carrying a concealed weapon."  Sgt. Barnhart asked Tucker if he could pat him down for weapons, and Tucker consented.

Upon searching Tucker, Sgt. Barnhart discovered three bags of marijuana, a set of scales with residue on it, a handkerchief, and a pair of clear plastic gloves.  At this point, the officers had probable cause to arrest Tucker.

Sgt. Barnhart then asked Tucker for permission to search the trailer. Tucker stated that the trailer was not his, and he was not able to consent to a search.  Sgt. Barnhart conducted a protective sweep of the bedroom from which Tucker had exited in order to confirm that there were no other suspects or weapons present in the trailer.  During the protective sweep, Sgt. Barnhart discovered a .45 caliber Ruger semiautomatic pistol under a pillow on the bed and a blue jacket containing several additional bags of marijuana.

After Sgt. Barnhart cleared the bedroom, Tracy Stewart, the homeowner, arrived at the trailer. Stewart asserted that Tucker was babysitting her son, the juvenile present in the trailer.  Additionally, Stewart provided written consent to a full search of the trailer. Upon searching the bedroom, the deputies found a mirror coated with a white residue and marijuana stems.  Tucker was subsequently arrested and taken into custody.

(Doc. #6, Exhibit 14, PageID at 96-98).

Following Tucker's arrest, a grand jury in the Court of Common Pleas, Clark

County, Ohio indicted him, through two indictments, on numerous charges:  one count of

aggravated robbery, two counts of robbery, two counts of having weapons while under a

disability, one count of possession of criminal tools, and one count of possession of drugs

(powder cocaine).  (Doc. #6, Exhs. 1, 2).

Tucker initially pled not guilty to each charge.  His attorney, Stephen E. Schutte, Esq., filed a Motion to Suppress arguing that the Deputy Sheriffs lacked probable cause to search the trailer he occupied during the night he was arrested.  Attorney Schutte further argued that no exigent circumstances justified the search and "that consent for the search was not given until it was concluded."  (Doc. #6, Exh. 3).

On July 2, 2009, the Judge held an evidentiary hearing on Tucker's Motion to Suppress during which attorney Schutte appeared and represented Tucker.  Two Deputy Sheriffs testified during the hearing; attorney Schutte cross-examined each Deputy and re-crossed examined one Deputy.  Attorney Schutte also presented a closing argument contending that Tucker had standing to contest the search; the deputies patted him down without his consent; and they undertook a warrantless search without probable cause and without his consent and without exigent circumstances.  Attorney Schutte maintained, "They simply saw a back door open, and that does not give rise to any exigent circumstances."  (Doc. #12, PageID at 320).  And he further argued that the scope of the search was too broad.  *Id*.

On July 7, 2009, the Judge issued a written Entry denying Tucker's Motion to Suppress.  He first concluded that Tucker lacked standing "to even challenge the constitutionality of the deputies' warrantless search..." because Tucker was a babysitter rather than an overnight guest and because "there was no evidence to suggest [Tucker] had any legitimate expectation of privacy in the residence...."  (Doc. #6, Exh. 6, PageID

at 61).  The Judge further concluded that the warrantless search "was lawful under the exigent circumstances exception to the warrant requirement."  *Id.*, PageID at 62).  The Judge reasoned:

> The deputies were on notice of a home invasion that had just occurred next door and the back door to the home at Lot #21 was suspiciously wide open in the middle of the night.  The deputies knocked and announced but they got no response.  Once inside, they discovered the defendant along with a firearm and body armor.  The defendant stated that he was a convicted felon.  The deputies received conflicting stories from the defendant and the juvenile resident inside the home.
>
> Based upon the exigent circumstances exception to the warrant requirement and the totality of the circumstances, the deputies lawfully entered and searched the home at Lot #21 to perform their duty to protect the public at large, the surrounding neighborhood, and, more specifically, the residents and/or guests of the Lot #21 home.

(Doc. #6, Exh. 6, PageID at 62).

Tucker next entered into a plea agreement with the prosecution.  Under its terms, he pled no contest to the charges of possession of drugs and having weapons under a disability.  His no-contest pleas resulted in two corresponding convictions and his present sentence and incarceration.

### B.    <u>Direct Appeal</u>

Attorney Schutte continued to represent Tucker during his direct appeal in the Ohio Court of Appeals.  Tucker's brief challenged the Judge's denial of his Motion to Suppress under one assignment of error:

> The Court erred in determining that the Defendant lacked standing to deny consent for the warrantless search of a trailer as a babysitter therein.

(Doc. #6, Exh. 11, PageID at 79).  Attorney Schutte relied on *Katz v. United States*, 389 U.S. 347, 353 (1967) and argued that Tucker had a reasonable expectation of privacy in the trailer, and consequently, the Judge erred in finding that Tucker lacked standing to challenge the search.  *Id.*, PageID at 80.  Attorney Schutte also pointed out, "The Trial Court further found that 'exigent circumstances' justified the search.  The deputy's testimony was that there was no criminal activity noted upon his arrival, only an open door at trailer 21." *Id*.

In his Reply to the State of Ohio's Answer Brief, attorney Schutte argued that there was no testimony during the evidentiary hearing to support the conclusion that exigent circumstances existed.  (Doc. #6, Exh. 13, PageID at 94).

The Ohio Court of Appeals found it unnecessary to address whether Tucker had standing to challenge the search of the trailer because it agreed with the trial judge's conclusion that exigent circumstances justified the warrantless entry into the trailer.  *Id.*, PageID at 100.  The Ohio Court of Appeals also reasoned, "the facts discovered thereafter permitted a further search for officer safety based upon the discovery of body armor.  Additionally, a lawful basis existed to arrest Tucker for possession of illegal drugs and paraphernalia prior to searching the adjacent bedroom, which led to the discovery of the handgun." *Id*.

Tucker filed a pro se direct appeal in the Ohio Supreme Court.  The Ohio Supreme Court dismissed his appeal "as not involving any substantial constitutional question." (Doc. #6, Exh. 18).

C.    **Application or Motion to Reopen Appeal**

Tucker also filed in the Ohio Court of Appeals a pro se Application to Reopen

Appeal under Ohio R. App. P. 26.  The Ohio Court of Appeals reported his five

assignments of error as follows:

> The trial court erred when it denied Appellant's motion to suppress the evidence seized during the warrantless search of the trailer, in violation of the IV Amendment of the United States Constitution and analogous provisions under Ohio's Constitution.

> The Appellant has standing to challenge a search when law enforcement officers concede knowledge that Appellant was at [the] residence for the evening as a guest.

> Appellate counsel failed to identify whether an open door is probable cause to justify warrantless entry; whether an open door creates exigent circumstances.

> Appellate counsel failed to identify that the plain view doctrine may not entry [sic].

> Appellate counsel neglected to identify that no evidence existed to lead law enforcement to believe that there was a possible third party or that Appellant was at trailer 21.

(Doc. #6, Exh. 20, PageID at 138-39) (capitalization omitted).  Denying Tucker's Rule 26

Application, the Ohio Court of Appeals stated:

> All five of the issues Tucker raises relate to his challenge to the warrantless search of the trailer.  These issues have been addressed in his previous direct appeal and therefore are barred from further review by the doctrine of res judicata.  *State v. Dehler* (1995), 73 Ohio St.3d 307; *State v. Terrell* (1995), 72 Ohio St.3d 247.  Tucker has not addressed why his motion to reopen should render the application of the doctrine of res judicata unjust.  Since Tucker has failed to raise any new issues on his motion to reopen, we find no reason to re-examine his appeal.

(Doc. #6, Exh. 20, PageID at 139).

Tucker then filed a pro se Memorandum in Support of Jurisdiction in the Ohio

Supreme Court, raising one proposition of law:

> Whether it was constitutional for the Second District [Court of
> Appeals] denying Appellant's Rule 26(B) [Application] under res judicata
> when Appellant claimed Ineffective Assistance of Appellate Counsel as a
> genuine issue, a clear violation of the VI Amendment of the United States
> Constitution and analogous provisions under Ohio's Constitution?

(Doc. #6, Exh. 22, PageID 145). The Ohio Supreme Court dismissed Tucker's appeal "as

not involving any substantial constitutional question." (Doc. #6, Exh. 24).

## III. <u>Discussion</u>

Tucker raises two grounds for relief in his habeas corpus petition: (1) his

convictions were "obtained by use of evidence gained pursuant to an unconstitutional

search and seizure"; (2) his appellate counsel provided constitutionally ineffective

assistance. (Doc. #1, PageID at 17).

### A. <u>Ground One: Search and Seizure</u>

Tucker explains the basis of his constitutional challenge to the search of the trailer

and the seizure of evidence as follows:

> During their testimony, the arresting officers admitted that they had
> no search warrant, no permission to search, nor was there any evidence to
> lead them to conduct the search of the wrong trailer. The officers
> responded to a robbery call and admitted that they knew beforehand that
> this was not the correct trailer that the robbery call came from, that they
> never even went to the place of the original distress call, nor w[ere] there
> any witnesses or footprints to lead a trail to the place of the unlawful,
> warrantless search and seizure. The officer's only reason for the intrusion
> was an open door where there was no visible signs of a forced entry, yet

8

> both screen doors were propped open, and the officers admitted there was
> no criminal activity going on.  The officers approached the trailer, shouted
> "sheriffs," and entered the trailer to find a sleeping juvenile on the coach,
> and the defendant emerging from the bedroom, visibly unarmed.  Exigent
> circumstances was of the officers own making.

(Doc. #1, PageID at 17).

Respondent contends that Tucker's search-and-seizure claim is not cognizable in

the instant federal habeas case under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037 (1976).

The Supreme Court held in *Stone v. Powell*, "where the State has provided an

opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may

not be granted federal habeas corpus relief on the ground that evidence obtained in an

unconstitutional search or seizure was introduced at his trial."  428 U.S. at 494.

> *Stone* ... requires a district court to make two distinct inquiries in
> habeas proceedings.  Initially, the district court must determine whether the
> state procedural mechanism, in the abstract, presents the opportunity to
> raise a fourth amendment claim....  Second, the court must determine
> whether presentation of the claim was in fact frustrated because of a failure
> of that mechanism.

*Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (internal citations omitted).

Ohio provides an adequate procedural mechanism for the litigation of Fourth

Amendment search-and-seizure claims in the form of a pretrial Motion to Suppress

pursuant to Ohio R. Crim P. 12 along with the right to pursue a direct appeal – under

Ohio R. App. P. 3 and 5 – from an order denying a Motion to Suppress.  Given these

available procedures, Ohio's mechanism (viewed in abstract) presents the opportunity for

defendants to raise and litigate their Fourth Amendment search-and-seizure claims. *See*

9

*Riley,* 674 F.2d at 526; *see also Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000).

Tucker was provided a full and fair opportunity to raise his constitutional search-and-seizure claim in the Ohio courts.  His counsel filed a Motion to Suppress in the Court of Common Pleas where the Judge held an evidentiary hearing.  During the hearing, two Sheriff's Deputies testified about the events leading to, and the circumstances surrounding, their entry into trailer.  They also testified about the ensuing search and Tucker's arrest.  Tucker's counsel was given the opportunity to, and did, cross examine both Deputies.  And Tucker's counsel presented a cogent closing argument. *See* Doc. #12.  Because Tucker actually litigated his Motion to Suppress in the trial court, then challenged its denial on direct appeal in both the Ohio Court of Appeals and the Ohio Supreme Court, he cannot show that the Ohio courts failed to provide him with a full and fair opportunity to raise and litigate his Fourth Amendment claim. *See Stone*, 428 U.S. at 494-95.

Accordingly, Tucker's Fourth Amendment claim is not cognizable in this federal habeas corpus case. *Id.*

**B.      Ground Two:  Denial of Effective Assistance of Appellate Counsel**

**1.**

Tucker explains the basis of his claim that he was denied the effective assistance of appellate counsel in violation of his constitutional rights as follows:

> Appellate Counsel neglected to raise "Dead Bang Winner" claims only to pursue weaker claims.  Both the prosecutor and Judge stated that the main reasoning for the denial of the motion to suppress was due to exigent

circumstances.  Appellate Counsel chose to argue only that the defendant possessed standing to contest search and chose not to assign Exigent Circumstances as an error of assignment, counsel briefly added exigent circumstances did not exist because there was no criminal activity going on. Appellate Counsel chose not to address ineffective assistance of trial counsel because Appellate Counsel and Trial Counsel was the same entity. Trial Counsel neglected to introduce as evidence facts that defendant gave him that could have altered the decision.  Appellate Counsel received that same information again as well as other case law and rules that would have altered the Appellate Court's decision.

(Doc. #1, PageID at 17).

Respondent contends that Tucker's ineffective assistance of counsel claim lacks merit.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to Tucker's habeas petition.  *See Strouth v. Colson*, 680 F.3d 596, 600 (6th Cir. 2012) (and cases cited therein).  As a result, his claim of constitutionally ineffective assistance of appellate counsel is not reviewed de novo.  *See Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848 (2003).  Instead habeas relief is available to Tucker if the Ohio Court of Appeals' rejection of his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *see Greene v. Fisher*, __ U.S. __, __, 132 S.Ct. 38, 42 (2011).  This standard "is 'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction."  *Greene*, __U.S. at __, 132 S. Ct. at 43 (citations omitted).

"A state-court decision is contrary to clearly established federal law only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'"  *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc) (quoting in part *Williams v. Taylor,* 529 U.S. 362, 407-08, 120 S.Ct. 1495 (2000) (other citations omitted)).  "A state-court decision is an unreasonable application of clearly established federal law if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'"  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Williams,* 529 U.S. at 407-08, 120 S.Ct. 1495 (other citation omitted)); *see Harrington v. Richter*, __U.S. __, 131 S.Ct. 770, 785-86 (2011).

## 2.

When denying Tucker's Application to Reopen Appeal, the Ohio Court of Appeals rejected his five claimed errors as follows:

> All five of the issues Tucker raises relate to his challenge to the warrantless search of the trailer.  These issues have been addressed in his previous direct appeal and therefore are barred from further review by the doctrine of res judicata.  *State v. Dehler* (1995), 73 Ohio St.3d 307; *State v. Terrell* (1995), 72 Ohio St.3d 247.  Tucker has not addressed why his motion to reopen should render the application of the doctrine of res judicata unjust.  Since Tucker has failed to raise any new issues on his motion to reopen, we find no reason to re-examine his appeal.

(Doc. #6, Exh. 20, PageID at 139).

The Ohio Court of Appeals' reliance on res judicata gives pause because the

12

invocation of res judicata alone says nothing direct about Tucker's IAAC claim. After all, the claims Tucker previously adjudicated on his direct appeal did not (and could not) include an IAAC claim because appellate counsel's performance was ongoing while Tucker's direct appeal was pending. In addition, the Ohio Court of Appeals' reliance on res judicata led it to overlook the potential impact appellate counsel's lack of success has on Tucker's IAAC claim. As explained below, one factor applicable to evaluating an appellate counsel's performance is the strength or weakness of the arguments raised or omitted on direct appeal. *See Whiting v. Burt*, 395 F.3d 602, 616 n.8 (6th Cir. 2005).

A further problem emerges in the Ohio Court of Appeals' statement, "Since Tucker has failed to raise any new issues on his motion to reopen, we find no reason to re-examine his appeal." (Doc. #6, Exh. 20, PageID at 129). This point misses Tucker's IAAC claim – a new claim he raised for the first time in the Ohio courts in his Application to Reopen Appeal. In addition, the Ohio Court of Appeals' denial of Tucker's Application to Reopen Appeal contains no targeted analysis of his IAAC claim, and it lacks citation to any U.S. Supreme Court case or explanation of the legal standards applicable to evaluating such a claim. *See* Doc. #6, Exh. 20.

Despite these problems, Tucker's IAAC claim gains no traction in this federal habeas corpus case. Whether his IAAC claim is reviewed de novo because the Ohio Court of Appeals' decision did not adjudicate it on the merits, *see Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), or whether the Ohio Court of Appeals' denial is reviewed under the deferential AEDPA standards, *cf. Harrington v. Richter*, __U.S. __, 131 S.Ct.

770, 784 (2011),[3] Tucker's IAAC claim presents no basis for granting federal habeas relief.

A claim of ineffective assistance of counsel under the Sixth and Fourteenth Amendments to the Constitution requires the two-part showing set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064. These standards apply to claims of ineffective assistance of appellate counsel because the "Sixth Amendment guarantees the right to effective assistance of counsel on a first direct appeal as of right." *Boykin v. Webb*, 541 F.3d 638, 647 (6th Cir. 2008) (citing in part *Evitts v. Lucey*, 469 U.S. 387 (1985)); *see Burger v. Kemp*, 483 U.S. 776 (1987); *e.g.*, *Smith v. State of Ohio Dep't. of Rehab. & Corrections*, 463 F.3d 426, 432-35 (6th Cir. 2006).

To establish the existence of errors sufficient to support his IAAC claim, Tucker "must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermined the reliability of [his] convictions." *McMeans*, 228 F.3d at

---

[3] "[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the court's reasoning." *Richter*, __U.S. __, 131 S.Ct. 770, 784 (2011).

682 (citations omitted). Beginning with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 687, a non-exhaustive list of performance-related questions is considered. *Whiting*, 395 F.3d at 616 n.8. In the present case, the following questions are the most pertinent:

1. Were the issues omitted on appeal 'significant and obvious'?

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

*Whiting*, 395 F.3d at 616.[4]

Tucker's appellate counsel raised one assignment of error on direct appeal asserting that Tucker had standing to contest the search of the trailer, quoting *Katz v. United States*, 389 U.S. 347, 353 (1967) to support his contention that "the right to expectation of privacy ... is based upon the expectation that is 'one that society is prepared to recognize as 'reasonable.'" (Doc. 6, Exh. 11, PageID at 80). It was necessary, if not essential, for Tucker's counsel to raise this threshold standing argument in an attempt to overcome the trial court's decision that Tucker lacked standing to contest the warrantless search. *See, e.g., United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001) ("'standing' ... refer[s] to the threshold substantive determination of whether Smith

---

[4] The remaining questions are: (4) Were the omitted issues objected to at trial? (5) Were the trial court's rulings subject to deference on appeal? (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable? (7) What was appellate counsel level of experience and expertise? (8) Did the petitioner and appellate counsel meet and go over possible issues? (9) Is there evidence that counsel reviewed all the facts? (10) Were the omitted issues dealt with in other assignments of error? (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt? *Whiting*, 395 F.3d at 616 n.8.

has a reasonable expectation of privacy under the Fourth Amendment.").  Once Tucker's appellate counsel drew the Ohio Court of Appeals to the standing issue, he could then attempt to turn its attention to his challenge to the warrantless search of the trailer.  If appellate counsel had not litigated the standing issue, he would have risked a ruling by the Ohio Court of Appeals that Tucker lacked standing to raise any Fourth Amendment challenge to the search, potentially foreclosing appellate review of his challenge to the warrantless search.  *See Minnesota v. Olson*, 495 U.S. 91, 95, 110 S. Ct. 1684, 1687 (1990).[5]  For these reasons, it was not error for counsel to first raise the issue of Tucker's standing, and it was instead skilled appellate advocacy on Tucker's behalf.

Tucker points out that his appellate counsel failed to frame his exigent-circumstances arguments as a separate assignment of error in the Ohio Court of Appeals and that appellate counsel only briefly added an argument about the lack of exigent circumstances.  Tucker is correct that his appellate counsel did not frame his challenge to the trial court's finding of exigent circumstances as a separate assignment of error.  And upon review of appellate counsel's brief, his advocacy can be fairly criticized for raising minimal arguments with no citation to case law in support of his contention that exigent circumstances did not exist.  These shortcomings, however, did not constitute deficient performance by appellate counsel because he advanced two arguments in support of his

---

[5]  "Since... *Katz,* 389 U.S. at 347..., it has been the law that 'capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'"  *Olson*, 495 U.S. at 95 (quoting, in part, *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430 (1978)).

16

exigent-circumstances challenge. Tucker's appellate counsel first pointed out that a Deputy Sheriff testified, "there was no criminal activity noted upon his arrival, only an open door at trailer 21." (Doc. #6, Exh. 11, PageID at 80). Appellate counsel also argued that the trial court's finding of exigent circumstances was unsupported by testimony "to that effect by law enforcement involved with the search." (Doc. #6, Exh. 13, PageID at 94). These arguments sufficiently engaged the Ohio Court of Appeals in the Fourth Amendment/exigent-circumstances issue, resulting in a decision focused mainly on the pertinent case law and the factual circumstances of the Deputy Sheriffs' warrantless search. (Doc. #6, Exh. 14, PageID at 100-01) (citing, in part, *Katz,* 389 U.S. at 347; *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371 (1980); *Mincey v. Arizona*, 437 U.S. 385, 392-93, 98 S.Ct. 2408 (1978); *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091 (1984)). Although room for better appellate advocacy by Tucker's counsel existed, counsel litigated two prominent arguments – perhaps even the best two arguments – Tucker had in support of his Fourth Amendment challenge to the warrantless search of the trailer. Because of this, Tucker cannot show that appellate counsel committed "errors so serious that [he] was scarcely functioning as counsel at all...." *McMeans*, 228 F.3d at 682 (citing, in part, *Strickland*, 466 U.S. at 687).

Tucker counters that his appellate counsel failed to raise "dead-bang" winning arguments only to pursue weaker claims in the Ohio Court of Appeals. This contention lacks merit given the strength of the two arguments appellate counsel raised (as just explained). Looking for weaker or omitted arguments, Tucker refers to "various

instances of [ineffective assistance of ] trial counsel, prosecutorial misconduct, and trial court's abuse of discretion." (Doc. #8, PageID at 173; Exh. 19, PageID at 261). Tucker, however, has not pointed to a specific incident of alleged ineffective assistance of trial counsel. A review, moreover, of the suppression-hearing transcript reveals that trial counsel strongly advocated on Tucker's behalf. Trial counsel subjected both of the testifying Sheriff Deputies to cross-examination and subjected one Deputy to re-cross examination. Trial counsel presented a strong closing argument raising the standing issue and a challenge to the Deputies' pat-down search of Tucker. Trial counsel also argued that the warrantless search lacked probable cause and that Tucker did not consent to the search. As to the lack of exigent circumstances, trial counsel cogently argued, "They simply saw a back door open, and that does not give rise to any exigent circumstances." (Doc. #12, PageID at 320). Trial counsel also challenged the scope of the search as too broad. *Id*. Considering the strength of this advocacy, and the lack of an error by counsel during the suppression, Tucker cannot demonstrate that his trial counsel's performance was deficient in violation of Tucker's constitutional rights. *See Strickland*, 466 U.S. at 687.

Tucker further contends that his trial counsel "neglected to introduce as evidence facts that defendant gave him that could have altered the decision." (Doc. #1, PageID at 17). He explains:

> Trial counsel never introduced to Court during Motion to Suppress hearing that a description of the suspect was given by distress[ed] caller that suspect was tall and lanky in the 'police call-data sheet' and the defendant

was 5'7", 195 lbs.; defendant is deemed short and stocky, the opposite of
tall and lanky so defendant should never [have] been harassed as a suspect.
Appellant was never able to introduce the police call detail data sheet in his
appeals as evidence because Appellant never received a copy of his
transcripts to show a copy of the police call data sheet.

(Doc. #1, PageID at 18).

Assuming these additional facts were available to trial counsel, knowledge of the

suspect's and Tucker's respective heights and weight would not have eliminated each

Deputy's testimony during the suppression hearing about why they entered the trailer.

The differences, moreover, between Tucker's height and weight versus the suspect's

height and weight could not have impacted the Deputies' reasons for entering the trailer

because they did not see Tucker and observe his dimensions until after they entered the

trailer. And, given of this chronology, the comparative height and weight of Tucker and

the burglary suspect did not bolster – or even support – Tucker's challenge to the

warrantless entry into the trailer. For these reasons, Tucker's trial counsel did not err, and

did not provide constitutionally deficient performance, by omitting evidence during the

suppression about the suspect's and Tucker's respective heights and weights.

Because Tucker's trial counsel did not provide constitutionally ineffective

assistance, Tucker cannot establish that his appellate counsel erred by omitting a claim of

ineffective assistance of trial counsel. "'[A]ppellate counsel cannot be ineffective for a

failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir.

2003) (citation omitted); *see Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005)

("Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a

reasonable probability that inclusion of the issue would have changed the result of the appeal.") (citation omitted).

Turning to Tucker's assertion of prosecutorial misconduct, he has not pointed to any specific incident of such misconduct or otherwise shown the occurrence of misconduct by the prosecution.  The record of the suppression hearing fails to hint at prosecutorial misconduct.  Consequently, Tucker has not shown that his appellate counsel failed to raise winning claim of prosecutorial misconduct or that such a claim was clearly stronger than his challenge to warrantless search.  *See Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004) ("To provide effective assistance, appellate counsel need 'not raise every nonfrivolous claim on direct appeal.'").  Tucker's has similarly omitted any particular allegation in support of his claim that the trial court abused its discretion. Presumably he opposes the trial court's denial of his Motion to Suppress, but this does not help him show IAAC because his counsel challenged on direct appeal the trial court's denial of Tucker's Motion to Suppress.  In short, Tucker's conclusory mention of both prosecutorial misconduct and the trial court's purported abuse of discretion fails to support his IAAC claim.  *See Willis*, 351 F.3d at6 745; *see also Howard*, 405 F.3d at 485; *Bagley*, 380 F.3d at 971 ("the 'process of winnowing out weaker arguments on appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" (quoting in part, *Smith v. Murray*, 477 U.S. 527, 536 (1986)).

Accordingly, whether reviewed de novo or whether the Ohio Court of Appeals'

denial of Tucker's Application to Reopen Appeal is reviewed under the deference demanded by the AEDPA, Tucker's claim of ineffective assistance of appellate counsel provides no basis for granting federal habeas relief.

## IV.   **Certificate of Appealability**

Before a petitioner may appeal a denial of his habeas petition, he must first obtain a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack*, 529 U.S. at 484.  If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The conclusions reached herein are not debatable by jurists of reason and the case does not otherwise present issues sufficient to encourage Tucker to proceed further. Consequently, a certificate of appealability should not issue in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1.    Jason Tucker's Petition for Writ of Habeas Corpus (Doc. #1) be DENIED and DISMISSED;

2.      Tucker be denied leave to appeal *in forma pauperis*, and the Court CERTIFY under 28 U.S.C. §1915(a)(3) that any appeal Tucker seeks to take from a Decision and Entry adopting this Report and Recommendation is not taken in good faith;

3.      Tucker be DENIED a certificate of appealability under 28 U.S.C. §2253(c); and

4.      The case be terminated on the docket of this Court.


December 18, 2012                                                  __s/Sharon L. Ovington__
                                                           Sharon L. Ovington
                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).